O

# United States District Court
# Central District of California

| | |
|---|---|
| KEITH GRIEGO,<br><br>　　　　　　Plaintiffs,<br><br>　v.<br><br>OTIS JACKSON JR. et al.,<br><br>　　　　　　Defendants. | Case № 2:24-cv-03260-ODW (PVCx)<br><br>**ORDER GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS [33][53]; AND**<br>**DENYING AS MOOT MOTION TO STAY DISCOVERY [45]** |

## I.   INTRODUCTION

In 1999, Plaintiff Keith Griego created an album cover for hip hop artist Otis Jackson Jr. (First Am. Compl. ("FAC") ¶¶ 15, 21, ECF No. 16.) It featured a character that Jackson adopted and developed as his graphic alter ego and, over the ensuing two and a half decades, Jackson established the character's commercial use and obtained a trademark. (*Id.* ¶¶ 15, 18, 27.) In 2023, Griego registered his copyright in the 1999 album cover and now claims that Jackson and his affiliates are infringing Griego's copyright with their use of the character. (*Id.* ¶¶ 2, 17.) Defendants move for judgment on the pleadings. (Mot. J. Pleadings ("Motion" or "Mot."), ECF No. 33.) For the reasons below, the Court **GRANTS** the Motion.[1]

---

[1] Consequently, the Court denies the pending motion to stay discovery as moot. (ECF No. 45.) The Court considered the papers filed in connection with the motions and deemed the matters appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II.     BACKGROUND

In 1999, Griego created an album cover for Jackson, known professionally as "Madlib." (FAC ¶¶ 1, 21.) The cover features a distinctive character that Jackson subsequently adopted as the graphical representation of his alter ego; the character came to be known as "Quasimoto" or "Lord Quas." (*Id.* ¶¶ 15, 18.) Jackson developed the market for and use of Lord Quas over the following twenty-five years. (*See id.* ¶ 18.) For example, Jackson featured Lord Quas on his album covers and music videos. (*Id.*) In a music video, Jackson provided the voice for a cartoon version of Lord Quas, who rapped alongside the "real" Madlib. (*Id.*) Jackson, his solely owned Madlib Invazion LLC ("Madlib LLC"), and his co-owned Rapp Cats LLC ("Rapp Cats") created and sold a variety of merchandise featuring Lord Quas, including apparel and figurines. (*Id.* ¶¶ 18, 29–33.)

In November 2022, Madlib LLC applied to the United States Patent and Trademark Office ("USPTO") to register a design mark depicting Lord Quas. (*Id.* ¶ 24.) The application reflects that Jackson and Madlib LLC had been using the mark since 1999, including in the forms of "[v]inyl, cassette, and CD for sale . . . and Music Video featuring Quasimoto." (*Id.*)

Thereafter, in January 2023, Griego registered the 1999 album cover with the Copyright Office. (*Id.* ¶ 17.) Griego then sent Jackson a cease and desist letter. (*Id.* ¶ 26, Ex. B ("Demand Letter"), ECF No. 16.) He indicated that he was "gratified" that Jackson "appreciated" the "Lord Quas character so much," but was "hurt" that Jackson used it "without compensation, attribution, or permission." (FAC ¶ 19; Demand Letter 1.) Griego demanded that Madlib LLC withdraw the trademark application and stop using the Lord Quas character because the "character . . . belongs to Mr. Griego." (Demand Letter 3; FAC ¶ 26.) Griego now asserts "the implied license from Mr. Griego to Mr. Jackson to use Lord Quas" on the 1999 album "does not extend to using the character for other purposes." (FAC ¶ 21.) Madlib LLC did not withdraw its trademark application and, on May 3, 2023, the USPTO issued a

trademark registration for the image of Lord Quas for various goods and services. (*Id.* ¶ 27.)

Asserting that their use of Lord Quas infringes his copyright, Griego brings this suit raising claims against Jackson, Madlib LLC, and Rapp Cats for direct infringement, and against Jackson for vicarious infringement. (*Id.* ¶¶ 34–41.) Griego also seeks a declaration that the Lord Quas trademark is invalid. (*Id.* ¶¶ 42–45.)

Madlib LLC and Jackson move for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). (Mot. 5.) They argue that Griego's own allegations defeat his claims. (*Id.* (asserting that Griego's claims "do not survive the facts [he] has alleged in his FAC").) Rapp Cats fully joins in Madlib and Jackson's Motion. (*See* Rapp Cats Joinder Mot., ECF No. 34.) The Motion is fully briefed. (*See* Opp'n, ECF No. 37; Madlib & Jackson Reply, ECF No. 40[2]; Rapp Cats Joinder Reply, ECF No. 41.)

### III. LEGAL STANDARD

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1989). "If the pleadings establish facts compelling a decision one way, that is as good as if . . . evidence on summary judgment establishes the identical facts." *Weisbuch v. County of Los Angeles*, 119 F.3d 778, 783 n.1 (9th Cir. 1997).

When ruling on a motion for judgment on the pleadings, all well-pleaded "allegations of fact by the party opposing the motion are accepted as true" and

---

[2] Jackson and Madlib LLC object and move to strike a declaration and related argument that Griego includes with his opposition. (Defs. Evid. Objs. & Mot. Strike, ECF No. 40-1.) As the Court resolves the Motion without relying on the declaration or improper argument, it overrules the objection and denies the motion to strike.

construed in the light most favorable to that party. *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 810 (9th Cir. 1988). However, "conclusory allegations without more are insufficient" to withstand a motion for judgment on the pleadings. *Id.* Courts generally may not consider matters outside the pleadings on a Rule 12(c) motion without treating it as a motion for summary judgment. Fed. R. Civ. P. 12(d); *Hal Roach Studios*, 896 F.2d at 1550.

## IV. DISCUSSION

Defendants move for judgment on the pleadings on the grounds that (A) Griego, by his allegations, admits that he granted an unlimited license to use the Lord Quas character; (B) Griego lacks standing to bring his declaratory judgment cause of action; and (C) Griego is not entitled to the statutory damages and attorneys' fees he seeks. (Mot. 10–18.)

### A. Implied License

Griego claims that he owns the copyright to the 1999 album cover, inclusive of the Lord Quas character, and that the implied license he granted Jackson[3] does not extend to Defendants' other uses. (FAC ¶¶ 20–21, 35.) He alleges Defendants directly infringe his copyright by using the Lord Quas character without authorization, (*id.* ¶¶ 34–37), and Jackson vicariously infringes by failing to prevent Rapp Cats's direct infringement, (*id.* ¶¶ 38–41).

Defendants argue that Griego fails to allege facts which support that he limited the implied license to the 1999 album. (Mot. 11.) Defendants contend that Griego's factual allegations actually demonstrate the opposite, that the license was not limited, because Griego describes Defendants' wide-ranging, open, and notorious use of Lord Quas over many years, with Griego's knowledge and without his objection. (*Id.* at 12.)

---

[3] Griego attempts in his opposition to dispute that he granted Jackson an implied license. (*See* Opp'n 4, 7.) But he plainly alleges as much in the FAC. (FAC ¶ 21 (acknowledging "the implied license from Mr. Griego to Mr. Jackson to use Lord Quas").) On this Rule 12(c) motion, the Court does not consider Griego's arguments to the extent that, as here, they contradict the pleadings.

"[A] nonexclusive license may be . . . implied from conduct." *Effects Assocs., Inc. v. Cohen*, 908 F.2d 555, 558 (9th Cir. 1990) (citing 3 M. Nimmer & D. Nimmer, *Nimmer On Copyright* § 10.03[A] (1989)). Courts typically find an implied license when "(1) a person (the licensee) requests the creation of a work, (2) the creator (the licensor) makes that particular work and delivers it to the licensee who requested it, and (3) the licensor intends that the licensee-requestor copy and distribute his work." *Asset Mktg. Sys., Inc. v. Gagnon*, 542 F.3d 748, 754–55 (9th Cir. 2008) (quoting *I.A.E., Inc. v. Shaver*, 74 F.3d 768, 776 (7th Cir. 1996)). No factor is dispositive, but the touchstone of an implied license is the licensor's objectively manifested intent at the time of delivery. *John G. Danielson, Inc. v. Winchester-Conant Props.*, 322 F.3d 26, 40 (1st Cir. 2003); *Asset Mktg.*, 542 F.3d at 756. Thus, in evaluating an implied license, "courts consider whether the totality of the parties' conduct indicates that the licensor intended to grant the licensee permission to use the work." *Fontana v. Harra*, No. 2:12-cv-10708-CAS (JCGx), 2013 WL 990014, at *4 (C.D. Cal. Mar. 12, 2013) (citing *Nimmer on Copyright* § 10.03[A][7] (2012)).

"The existence of a license creates an affirmative defense to a claim of copyright infringement." *Worldwide Church of God v. Phila. Church of God, Inc.*, 227 F.3d 1110, 1114 (9th Cir. 2000); *Falcon Enters., Inc. v. Publishers Serv., Inc.*, 438 F. App'x 579, 581 (9th Cir. 2011). As with any affirmative defense, the burden of proving the existence of such a license is on the party claiming its protection, the licensee. *Bourne v. Walt Disney Co.*, 68 F.3d 621, 630–31 (2d Cir. 1995). Where the existence of a license is established, the copyright owner bears the burden of proving that it is limited and the licensee exceeded its scope. *Id.* at 631 (stating rule that the copyright owner must plead and prove copying "beyond the scope of [the] license" (alteration in original) (quoting *S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1085 (9th Cir. 1989))).

Griego alleges that he granted an implied license to Jackson to use Lord Quas on the 1999 album. (FAC ¶ 21.) His factual allegations further support the existence

of an implied license. (*See* FAC ¶¶ 1, 15, 18–19, 23–24, 29–33.) Defendants agree that Griego granted an implied license. (Jackson & Madlib Answer ¶¶ 1, 15, 18–19, ECF No. 26; Rapp Cats Answer ¶¶ 1, 15, ECF No. 25.) Thus, the existence of an implied license is undisputed, and the burden is Griego's to establish that Defendants' accused use is beyond the license's scope. *See Netbula, LLC v. BindView Dev. Corp.*, 516 F. Supp. 2d 1137, 1151 (N.D. Cal. 2007) (finding that, where the parties agree to the existence of an implied license, plaintiff must prove that it was limited and defendants exceeded its scope).

Griego argues that the implied license to use the album cover was limited to the 1999 album and "does not extend to using the [Lord Quas] character for other purposes." (FAC ¶ 21; Opp'n 3.) However, other than this singular, conclusory allegation, Griego fails to allege any facts from which the Court could infer that he manifested an objective intent to limit the license "at the time of the creation and delivery." *Asset Mktg.*, 542 F.3d at 756; (*see generally* FAC). Further, nowhere does Griego allege that he manifested such an intent at any time throughout the many years in which Defendants openly developed and commercialized the Lord Quas character. (*See generally* FAC.)

Griego's allegations also indicate he was aware of Defendants' use and was even "gratified" by the appeal that the Lord Quas character had developed. (*Id.* ¶ 19.) Indeed, Griego acknowledges that Defendants' use has been so extensive and notorious that the Lord Quas character has taken on a meaning of its own, as the graphical representation of Jackson's alter ego. (*See, e.g., id.* ¶ 18.) Yet, for nearly twenty-five years, Griego never objected to Defendants' myriad uses of the Lord Quas character. (*See id.* ¶ 26 (alleging Griego sent the Demand Letter in January 2023); *see generally id.* (including no allegations of any objection prior to 2023).) That Griego knew of Defendants' extensive use and did not object for nearly twenty-five years contradicts his current, unsupported claim that the license was limited from the start. *See ExperExchange, Inc. v. Doculex, Inc.*, No. C-08-03875 JCS, 2009 WL 3837275,

at *23–24 (N.D. Cal. Nov. 16, 2009) (finding implied license extended to defendants' actual uses where the plaintiff knew that defendant was using copyrighted work beyond the implied limitation for eight years and did not object); *see also Field v. Google Inc.*, 412 F. Supp. 2d 1106, 1116 (D. Nev. 2006) (noting that consent may be inferred "based on silence where the copyright holder knows of the use and encourages it"); *Keane Dealer Servs., Inc. v. Harts*, 968 F. Supp. 944, 947 (S.D.N.Y. 1997) (noting that consent may be "given in the form of mere permission or lack of objection" (quoting *I.A.E.*, 74 F.3d at 775)).

Considering the totality of circumstances reflected in his allegations, Griego's belated assertion that the implied license was limited to the 1999 album is simply implausible. *See Asset Mktg.*, 542 F.3d at 758 (finding plaintiff's "belated statement" that the license was limited, made "well after the creation and delivery" of the work, "was not sufficient to negate all other objective manifestations of intent to grant [defendant] an unlimited license"). Griego's allegations establish the existence of an unlimited license, or at the least, a license permitting the Defendants' uses of the Lord Quas character to date. Consequently, Griego's copyright infringement causes of action must fail, as Griego cannot allege that Defendants' use of the Lord Quas character was unauthorized. *Netbula*, 516 F. Supp. 2d at 1151–52 (on summary judgment, finding plaintiff's copyright infringement claim failed because plaintiff did not meet its burden to show the license was limited).

The scope of an implied license is generally not susceptible to resolution on the pleadings. *Interscope Recs. v. Time Warner, Inc.*, No. 2:10-cv-01662-SVW (PJWx), 2010 WL 11505708, at *9 (C.D. Cal. June 28, 2010). However, in this exceptional instance, the pleadings "establish facts compelling a decision one way," as Griego pleads facts that preclude his infringement causes of action. *Weisbuch*, 119 F.3d at 783 n.1 ("Whether the case can be dismissed on the pleadings depends on what the pleadings say."); *ASARCO, LLC v. Union Pac. R. Co.*, 765 F.3d 999, 1004 (9th Cir. 2014) (noting that dismissal under Rule 12 on the basis of an affirmative defense may

be proper where "some obvious bar" appears "on the face of the complaint"). Accordingly, the Court **GRANTS** the Motion as to the first two causes of action.

**B.     Standing to Invalidate Trademark**

Griego also seeks a declaration from the Court that Madlib LLC's Lord Quas trademark is invalid because it infringes Griego's copyright in the album cover. (FAC ¶ 43.) As the Court finds Defendants' use of the Lord Quas design per the registered trademark is not infringing, Griego's declaratory relief claim fails.

But even were that not so, Griego lacks statutory standing to seek invalidation. Although Griego labels his third cause of action "Declaratory Judgment of Trademark Invalidity," (*id.* at 12), what he effectively seeks is cancellation of Madlib LLC's trademark. As such, the Court analyzes the claim in that context.

The Lanham Act authorizes "'any person who believes that he is or will be damaged . . . by the registration of a mark' to petition to cancel the registration." *Pinkette Clothing, Inc. v. Cosm. Warriors Ltd.*, 894 F.3d 1015, 1021 (9th Cir. 2018) (alteration in original) (quoting 15 U.S.C. § 1064).[4] To succeed, that person must establish statutory standing and valid grounds for cancellation. *Cunningham v. Laser Golf Corp.*, 222 F.3d 943, 945 (Fed. Cir. 2000); 3 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 20:41 (5th ed.).

The Lanham Act does not grant "all factually injured plaintiffs" statutory standing. *ThermoLife Int'l, LLC v. Compound Sols., Inc.*, 848 F. App'x 706, 709 (9th Cir. 2021) (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 129 (2014)). Instead, "a Lanham Act claim is available only to plaintiffs whose interests fall within the zone of interests protected by the law invoked and whose injuries are proximately caused by violations of the statute." *Diamond Resorts U.S. Collection Dev., LLC v. Pandora Mktg., LLC*, 656 F. Supp. 3d 1073, 1084

---

[4] Petitions to cancel a trademark are typically heard by the Trademark Trial and Appeal Board, but where "an action brought in federal court involves a registered mark, the district court may order cancellation of the registration." *Id.* at 1021 n.1 (citing 15 U.S.C. § 1119).

(C.D. Cal. 2023) (citing *Lexmark*, 572 U.S. at 129–32).[5] Statutory standing, "like any other element of a cause of action," must be "adequately alleged at the pleading stage in order for the case to proceed." *Lexmark*, 572 U.S. at 134 n.6.

To come within the "zone of interests" protected by the Lanham Act, Griego "must allege an injury to a commercial interest in [business] reputation or sales." *Id.* at 131–32. He has not. Absent from the FAC and opposition are any allegations that Griego seeks, or has sought in the past twenty-five years, to use his now-copyrighted work in commerce or business. (*See generally* FAC; Opp'n.) Therefore, on the pleadings, he does not come within the zone of interests which the Lanham Act was meant to protect. *See Lexmark*, 572 U.S. at 131 (quoting the Lanham Act's detailed statement of purposes at 15 U.S.C. § 1127). He thus lacks statutory standing to bring a claim for cancellation under the Lanham Act, and the Court **GRANTS** the Motion as to the third cause of action.[6]

## C.     Leave to Amend

If judgment on the pleadings is appropriate, a court has discretion to grant the non-moving party leave to amend, grant dismissal, or enter judgment. *See Lonberg v. City of Riverside*, 300 F. Supp. 2d 942, 945 (C.D. Cal. 2004). Leave to amend is properly denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).

Although Griego requests leave to amend, the amendment he proposes runs counter to the facts alleged in the FAC. (*See* Opp'n 14 (arguing that Griego did not grant Jackson an implied license, but rather granted the implied license to record label

---

[5] Although the Court in *Lexmark* applied this statutory standing framework to Lanham Act false advertising claims, the framework also applies to trademark cancellation claims. *Chemeon Surface Tech. LLC v. Metalast Int'l, Inc.*, No. 21-15561, 2022 WL 1797316, at *2 n.5 (9th Cir. June 2, 2022).

[6] As the Court finds that all of Griego's causes of action fail, it declines to reach Defendants' arguments regarding Griego's lack of entitlement to statutory damages and attorneys' fees.

Stones Throw Records).) Contrary to Griego's argument, such amendment does not merely "clarify earlier allegations." (*Id.*) Rather, the allegations he proposes would improperly negate the presently alleged facts. As Griego cannot rewrite history to avoid the consequences of pleading himself out of court, leave to amend is denied.

## V. CONCLUSION

For the reasons discussed above, the Court **GRANTS** Defendants' Motion for Judgment on the Pleadings. (ECF Nos. 33, 53.) In light of this disposition, the Court **DENIES** Defendants' Motion to Stay Discovery as moot. (ECF No. 45.) The Court will issue Judgment consistent with this Order.

**IT IS SO ORDERED.**

January 24, 2025

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**